**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAMON JOHNSON,                                      Case No. 1:16-cv-503

     Plaintiff,

                                    Black, J.
           vs                            Bowman, M.J.

MICHAEL DILLOW,

     Defendant.

## REPORT AND RECOMMENDATION

Plaintiff is a prisoner currently housed at Toledo Correctional Institution. He initiated this civil rights action in April 2016. This matter is now before the Court on the parties' cross-motions for summary judgment. (Docs. 46, 51).

### I. Background and Facts

Plaintiff is currently in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). At all times relevant to this action, Plaintiff was housed at Southern Ohio Correction Facility ("SOCF"), Lucasville, Ohio.

Plaintiff initiated this civil action on April 28, 2016 (Docs. 1, 3). Plaintiff later amended his complaint on July 5, 2016 (Doc. 11) and perfected service on Defendant on February 2, 2017, which Defendant answered on March 16, 2017. (Doc. 28). Plaintiff seeks compensatory and punitive damages in the amount of twenty-five thousand dollars ($25,000.00) (Doc. 11, PageID# # 63 – 64). He also a seeks declaration from this Court that the Defendants violated his constitutional rights. *Id.* The Court sua sponte dismissed all of Plaintiff's claims except the excessive force count against Sergeant Dillow. (See Docs. 4, 13, 14).

With respect to that claim, Plaintiff alleges that he was falsely accused of spitting at Officer Jason Henderson on December 29, 2015. (Doc. 3, PageID # 27; Doc. 11, PageID # 60). He was then confronted at his cell by three officers, including Sergeant Dillow. Plaintiff backed up to his cell front to be handcuffed but Sergeant Dillow "administered a burse of pepper spray… for no reason at all." (Doc. 11, PageID # 60).

In response to Plaintiff's allegations, Defendants submit the following facts as undisputed:

SOCF security video reveals the entirety of the incident underlying this lawsuit from the perspective of the exterior of the cell. (See Doc. 46, Defendant's Exhibit A, SOCF Video of 12/29/2015). The video does not contain audio nor does it show the cell's interior, but all of correctional officials can be seen responding to Plaintiff's actions, which occur within the cell and outside the camera view. *Id.* On December 29, 2015 at 10:29:20 a.m., Officer Jason Henderson is seen stopped at Plaintiff's cell (# 37) while doing rounds. Id. The two are conversing. *Id.* At 10:39:30, spit is projected out of Plaintiff's cell and into Officer Henderson's face. Id. Officer Henderson makes a brief statement and then walks off of the cell block at 10:40:02. *Id.* Ten minutes later at 10:50:58, Sergeant Dillow and two additional officers, Daniel Baker and Justin Throckmorton, cautiously approach Plaintiff's cell. (See Doc. 46, Defendant's Exhibit A).

Between 10:50:58 and 10:51:57, Sergeant Dillow is seen conversing with the Plaintiff. *Id.* At 10:51:57, Sergeant Dillow makes several gestures for Plaintiff to move toward the cell front. *Id.* At 10:52:00, Sergeant Dillow administers a very brief burst of OC spray. *Id.* At 10:52:25, Plaintiff is handcuffed and escorted from the cell block without further incident or force. Id.

Plaintiff received several significant prison disciplinary convictions for spitting on Officer Henderson. (See Doc. 46, Defendant's Exhibit B, Declaration of Larry Greene, pp. 4 – 5 of 7). Despite video evidence of spit being projected onto Officer Henderson from within his cell, he reasserts in his complaint and amended complaint that the charge was false. (Doc. 11, PageID # 60 ¶ 1).

In his Rules Infraction Board ("RIB) disciplinary proceeding, he plead guilty to violating Rule 26 of the Ohio Administrative Code § 5120-9-06, and was found guilty of violating Rule 6. (See Defendant's Exhibit B, p. 6). Rule 26 is "[d]isrespect to an officer, staff member, visitor or other inmate" and rule 6 is "[t]hrowing, expelling, or otherwise causing a bodily substance to come into contact with another." (Ohio Adm. Code § 5120-9-06). He received fifteen (15) days of disciplinary confinement and was continued on 4B security status and also was ordered to pay restitution in the amount of $141.24 for blood testing, as a result of those prison convictions. (See Doc. 46, Defendant's Exhibit B, p. 6). Upon appeal, DRC Director Gary Mohr affirmed the RIB decision. Id. at p. 7. Two impartial, non-party witnesses observed the incident: Officers Justin Throckmorton and Daniel Baker. (See Defendant's Exhibit C, Declaration of William Cool, pp. 4 – 8 of 10). They are the two correctional personnel present in the video. Both submitted signed incident reports describing the entire interaction between Plaintiff and Sergeant Dillow. Id. at pp. 7 – 8. Officer Baker attests that Plaintiff initially had a t-shirt wrapped around his head and at some point removed it. Id. at p. 7. He also attested that Sergeant Dillow ordered Plaintiff to back up towards his cell front. In his words, he "heard I/M Johnson [] spit." Id. He then "witnessed I/M Johnson [] turn suddenly to the left towards Sgt. Dillow." Id. Officer Throckmorton testified similarly. (See Doc. 46, Defendant's Exhibit D,

Declaration of Justin Throckmorton). Plaintiff initially had a shirt wrapped around his head which Dillow ordered to be removed. Id. at ¶ 4. Plaintiff moved to the back of his cell and removed the shirt. Id. at ¶¶ 4 – 5. He then threatened to spit on Sergeant Dillow. Id. at ¶ 5. Sergeant Dillow ordered him to back up towards the cell front to be handcuffed, which Plaintiff initially refused. Id. After another verbal order, he began backing up but then turned and spit on his wall while still moving backward. Id. He then "turned quickly towards Sgt. Dillow", at which time he was sprayed with OC. Id. at ¶¶ 5 – 6.

Officer Throckmorton attests that Plaintiff was ordered to back up without turning, but that he turned suddenly in defiance of that order. Id. He also attests that the officers were apprehensive when they approached Plaintiff's cell because they believed he might also spit on them as he spat on Officer Henderson. Id. He further states that, based on his experience as a correctional officer, "Inmate Johnson was attempting to spit at one of us attempting to escort him away." Id. He further attests that Sergeant Dillow's actions were necessary to prevent Plaintiff from succeeding in another spitting episode. Id. Sergeant Dillow's conduct report has no real deviation from the other two officers' accounts. (Doc. 46, Def. Ex. C, p. 6 of 10). He ordered Plaintiff to remove the shirt from his head, ordered him to back up towards his cell more than once, observed Plaintiff spit on the wall, heard Plaintiff verbally threaten to spit at them, and then witnessed Plaintiff suddenly (and against orders) turn his head once he was in spitting distance, which he interpreted as an attempt to spit at him. Id. He also admits to administering a burst of OC spray at Plaintiff.

Based on the foregoing, Defendant asserts that he acted reasonable under the circumstance and are therefore entitled to judgment as a matter of law. The undersigned agrees.

## II. Defendants motion for Summary Judgment is well-taken

### A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to

demonstrate a prima facie case, summary judgment is warranted. *St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Eighth Amendment Claim

As noted above, Plaintiff claims that Defendant Dillow violated his constitutional rights to be free from excessive force by deploying pepper spray into his cell in December 2015.  Notably, a prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Excessive force claims

must focus "on the nature of the force rather than the extent of the injury...." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson,* 503 U.S. at 7; *Whitley,* 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney,* 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm ... contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.*(quoting *Hudson,* 503 U.S. at 7).

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres,* 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 Fed.Appx. 723, 725 (6th Cir. 2004)). Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of ... chemical agents against recalcitrant prisoners." *Id.* (quoting *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings,* 93 Fed.Appx. at 725 ("The videotape squarely demonstrates that

Jennings disobeyed repeated direct orders prior to the use of pepper spray."). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order."). *But see Williams v. Curtin,* 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id. Se*e also *Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

Here, Johnson contends he was the subject of excessive force (pepper spray) and that he was denied medical attention by corrections officials following the OC spray on December 29, 2015. (Doc. 1). Johnson further claims that the amount of OC spray Defendant used was an "excessive and dangerous quantity" and a "large burst." (Doc. 49, PageID ## 222, 225). He further asserts that he was not provided an opportunity to

decontaminate himself after the incident. (See Doc. 49, PageID ## 219, 223). As such, Johnson claims that his Eighth Amendment rights were violated as such alleged conduct was cruel and unusual punishment. (Doc. 1). Notably, Plaintiff attached sixty-four (64) pages of documents to his combined response to Defendant's motion for summary judgment. (Doc. 49, Ex. 1). He appears to cite to his record about nine (9) times. He does not quote the record to which he cites, nor does he explain how his record supports his argument or generates a dispute as to any material fact. However, other than asserting that Defendants version of the events were false Plaintiff failed to present any evidence to rebut Defendants' well-supported version of the events.

Defendants argue that summary judgment should be granted in their favor on Plaintiff's Eighth Amendment excessive force claim because the use of pepper spray under the circumstances constituted a reasonable use of force to gain control of Plaintiff. Notably, the record establishes that Plaintiff created a dangerous situation by spitting on a corrections officer and also defying Defendant Dillow's direct orders to back up towards his cell. (Doc. 46, Ex. A).

Thus, the undersigned agrees that Johnson's own conduct brought about this incident – he previously spat at an officer, thereby creating a penological safety issue and discipline situation that required Defendant Dillow to retrieve him from his cell; whereupon he initially refused to comply with orders and back up towards the front of the cell, then once he was close enough he make a quick gesture towards Dillow.. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted). The Eighth Amendment

standard focuses on the official's "obduracy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21.

The evidence establishes that the use of pepper spray by Defendant Dillow was a reasonable and minimal response to a noncompliant Johnson. Defendants Dillow is entitled to use force to maintain order. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Notably, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene*, No. 99-3179, 1999 U.S.App. LEXIS 34054, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed); *White v. Fowler*, 881 F.2d 1078 (6th Cir. 1989) (holding that officer was entitled to summary judgment on Plaintiff's excessive force claim even though Plaintiff was shackled when officer sprayed him with mace on a bus because the officer needed to restore "discipline and security to the bus").

Thus, because Plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether Defendant's use of force was reasonable under the circumstances and whether the Defendant denied him proper medical treatment, summary judgment should be granted to Defendant Dillow on Plaintiff's Eighth Amendment excessive force claim.

*D. Qualified Immunity*

In his last argument in favor of summary judgment, Defendant asserts that he is entitled to qualified immunity on claims filed against him in his individual capacities because he acted reasonably under the circumstances. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Plaintiff argues that "[d]efendants are not entitled to qualified immunity because a reasonable correctional officer would have let Plaintiff surrender instead of spraying him out of retaliation." (Doc. 49, PageID # 224). However, the record evidence clearly

established that any use of force by Defendant Dillow was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As noted above, Plaintiff Sergeant Dillow ordered Plaintiff several times to comply with the directives and Plaintiff refused. As such, Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same.

Therefore, the Defendant Dillow is immune from Plaintiff's claims for excessive force and is entitled to judgment as a matter of law.

**III. Conclusion**

For these reasons, is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 46) be **GRANTED**, Plaintiff's motion for summary judgment (Doc. 50) be **DENIED;** and this case be **CLOSED.**

    *s/*Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAMON JOHNSON,                                    Case No. 1:16-cv-503

      Plaintiff,

                                  Black, J.
      vs                                        Bowman, M.J.

MICHAEL DILLOW,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).